**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
UNITED STATES OF AMERICA,                   :
                                            :
                                            :        15 Cr. 288 (RMB)
            - against -                     :
                                            :        **DECISION & ORDER**
PETER BLAIR,                                :
                                            :
                        Defendant.          :
-------------------------------------------------------------x

      Having reviewed the record herein, including without limitation: **(1)** Defendant Peter Blair's motion for compassionate release, filed pro se and dated October 15, 2020. Blair, who is 25 years old and is presently incarcerated at FCI Ray Brook in New York, contends that on September 14, 2020, he petitioned the Warden of FCI Ray Brook for early release based upon "documented medical and psychological conditions," including "severe[] obes[ity][,] . . . anxiety, depression, and insomnia." See Def. Mot. at 1-2. Blair also states that he is "no longer a threat to society"; his mother's "health is rapidly deteriorating and [if he is released,] . . . . [he] will be her around the clock provider being that [he] will be release[d] to her residence"; and he has "made a great effort at rehabilitation," including having taken 582 hours of programs while incarcerated. Id. at 2-3; **(2)** the Government's opposition to Blair's motion for compassionate release, dated November 6, 2020, contending that: (i) "Blair has failed to exhaust his administrative remedies"; (ii) Blair's medical conditions, "in particular his obesity," combined with the COVID-19 pandemic, do rise to the level of "extraordinary and compelling reasons"; (iii) "[Blair's] sentence rightly reflected the Court's determination that 72 months' imprisonment was necessary to protect the public from the defendant's dangerous conduct"; and (iv) while Blair claims he has rehabilitated himself, he "has been sanctioned eight times" while incarcerated. See Gov't Opp. at 1, 4-5. The Government also submits Blair's BOP medical records as Exhibit A which reflect his physical examinations at FCI Ray Brook between July 2020 and October 2020; **(3)** Blair's reply, dated November

1

12, 2020, contending that: (i) he did exhaust his administrative remedies and enclosing the request that he sent to the Warden on September 14, 2020; (ii) he is not a "violent person [and] there [are] no records of [him] being charged with a violent crime"; (iii) he continues to have a "low classification"; and (iv) there has been a recent lockdown at FCI Ray Brook "because of 2-3 positive cases in [a nearby] housing unit." See Def. Reply at 1-3; **(4)** Blair's supplemental letter, dated December 22, 2020, advising the Court that he "recently received the Warden['s] denial [of] [his] compassionate release [petition]." See Def. Suppl. Ltr. at 1; and **(5)** the Government's supplemental response, dated January 11, 2021, acknowledging Blair's "exhaustion of [his] administrative remedies." See Gov't Suppl. Opp. at 1. The Government also contends that: "nothing about the defendant's criminal conduct has changed since [] to warrant a reduction in sentence"; and "measures have been taken at the facility to minimize the spread of COVID-19 among the approximately 740 inmates." Id. at 1-2, **the Court hereby denies Blair's motion for compassionate release, as follows:[1]**

## I. Background

On July 27, 2016, Blair pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine in crack form, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and 846; and possession of a firearm during and in relation to the conspiracy, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). See Plea Hr'g Tr. at 15:12-17. On December 13, 2016, the Court sentenced Blair to 72 months' imprisonment followed by 5 years of supervised release. See Sentencing Tr. at 18:5-16. Blair's Sentencing Guidelines range was 72 to 78 months' imprisonment, including a 60-month mandatory minimum sentence. Id. at 3:6-11; see also PSR ¶ 9.

FCI Ray Brook is described as "a medium security federal correctional institution with a detention center." FCI Ray Brook, BOP, https://www.bop.gov/locations/institutions/rbk/; see also Gov't Opp. at 2.

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

As of January 13, 2021, Blair has served approximately 61 months (or 85%) of his full 72 month sentence. See Gov't Opp. at 2. Blair's projected release date is May 26, 2021. Id. He is scheduled to be placed into a halfway house on March 21, 2021. Id.

## II. Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C. § 3582 "allows a court to reduce a term of imprisonment or supervised release after considering the factors set forth in 18 U.S.C. § 3553(a) and finding that 'extraordinary and compelling reasons warrant such a reduction.'" *See United States v. Turnbull*, 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020); *see also United States v. Sturgis*, 2020 WL 7063359, at *3 (W.D.N.Y. Nov. 24, 2020).

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement."

"[I]n deciding a compassionate release motion brought directly by a prisoner . . . [t]he court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). However, "a district court's discretion in this area – as in all sentencing matters – is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). District courts are "free[] . . . to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

**III.** **Findings**

1. Blair has exhausted his administrative remedies. *See United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020); *United States v. Gray*, 2020 WL 3050730, at *3 (S.D.N.Y. June 8, 2020). The Warden of FCI Ray Brook denied Blair's compassionate release request on December 11, 2020, stating that: "The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. . . . [Y]our concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence." See Def. Suppl. Ltr. Ex. A at 1.

2. Blair's medical records reflect that he has the following medical conditions: "major depressive disorder," "anxiety disorder," and "obes[ity]." See, e.g., BOP Medical Records Ex. A at 7, 25, 28, 31. Blair has been prescribed an antidepressant to treat his major depressive disorder and anxiety disorder, and BOP medical doctors have "discussed [with Blair his] diet[], weight loss, . . . daily exercise[], & lifestyle modifications." Id. at 7, 29.

3. The Centers for Disease Control and Prevention ("CDC") has designated obesity as a condition that increases the risk of severe illness from COVID-19. See People at Increased Risk, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Jan. 4, 2021). At a February 14, 2020 physical examination, BOP medical personnel noted that Blair "appears obese," and at an April 8, 2020 examination, BOP medical personnel noted: "Abdomen obese." BOP Medical Records Ex. A at 25, 28.

4. The CDC has not designated major depressive disorder or anxiety disorder as conditions that increase the risk of severe illness from COVID-19. *See United States v. Foster*, 2020 WL 7424973, at *2 (N.D. Ohio Dec. 17, 2020); *see also United States v. Moldover*, 2020 WL 6731111, at *10 (E.D. Pa. Nov. 13, 2020).

5. As of January 13, 2021, there were 34 active COVID-19 cases at FCI Ray Brook out of a total inmate population of 740. See COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 13, 2021).

6. At a January 9, 2020 physical examination, BOP medical personnel noted that Blair is a "healthy appearing male." See BOP Medical Records Ex. A at 30. Blair's BOP medical records indicate that between July 11, 2020 and September 25, 2020, medical personnel conducted forty (40) COVID-19 screenings of Blair. During each screening, medical personnel took Blair's temperature and assessed whether Blair had any COVID-19 symptoms. Id. at 60-62. Between July 9, 2020 and August 18, 2020, BOP medical personnel tested Blair eight (8) times for COVID-19. Id. at 9, 13, 58, 74, 79, 87-88. Since at least January 9, 2020, Blair's major depressive disorder and anxiety disorder have been treated with a daily "45 MG tab[let] [of] Mirtazapine," an antidepressant. Id. at 7, 21, 23, 31, 36, 41.

## IV. Analysis

The Court denies Blair's motion for compassionate release. Blair has not met his burden of proof to establish extraordinary and compelling reasons warranting his compassionate release. More importantly, the Court concludes that Blair poses a danger to the community, and that the 18 U.S.C. § 3553(a) sentencing factors weigh against Blair's early release.

**(1) Extraordinary and Compelling Circumstances**

Blair's obesity does not constitute an extraordinary and compelling reason for compassionate release in this case. *See United States v. Pena*, 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020) ("[defendant's] obesity [] alone is not enough to warrant compassionate release"); *United States v. Lindo*, 2020 WL 5038766, at *1 (S.D.N.Y. Aug. 26, 2020) ("if preexisting medical conditions such as obesity were the end of the compassionate-release inquiry, every inmate who suffers from a COVID-19 risk factor would be entitled to release"); *United States v. Staltare*, 2020 WL 2766124, at *1 (S.D.N.Y. May

28, 2020) (where defendant with severe obesity "has given no indication that his medical condition[] substantially diminish[es] his ability to provide self-care, or cannot be managed[,] . . . Defendant has not set forth an 'extraordinary and compelling' reason"); *see also United States v. Cajigas*, 2020 WL 6625210, at *2 (S.D.N.Y. Nov. 11, 2020) ("in light of [defendant's] age . . . and the fact that he presents no other health conditions, [defendant's] obesity . . . do[es] not satisfy the extraordinary and compelling standard"); *United States v. Batista*, 2020 WL 6132239, at *4 (S.D.N.Y. Oct. 19, 2020) (denying compassionate release to defendant with obesity where "at 28 years old, [defendant] is in an age group with relatively lesser risk of hospitalization or death from COVID-19"); *United States v. Newton*, 2020 WL 6784267, at *6 (D. Conn. Nov. 18, 2020) ("[Defendant's] obesity [] does not establish[] 'extraordinary and compelling' reasons for his release, particularly in view of . . . his age [26 years old]").

Moreover, Blair has not shown that there is a risk to him of COVID-19 at FCI Ray Brook. According to Blair: "as of Nov. 4, 2020[,] . . . there were 2-3 positive cases [of COVID-19] in [a nearby] housing unit." See Def. Reply at 3. As of January 13, 2021, there were 34 active COVID-19 cases at FCI Ray Brook out of a population of 740 inmates. *See United States v. Arrendondo-Valenzuela*, 2020 WL 7488970, at *5 (D. Kan. Dec. 21, 2020) ("as of December 21, 2020, 31 inmates [] at FCI Ray Brook had tested positive for COVID-19 . . . the risk that COVID-19 may spread at FCI Ray Brook cannot justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread"); *see also United States v. Gutierrez*, 2020 WL 6260654, at *5 (D. Conn. Oct. 23, 2020). And, FCI Ray Brook appears to be regularly monitoring Blair and other inmates for COVID-19 and providing adequate medical care and medication. See pp. 4-5, supra; Gov't Suppl. Opp. at 2; *see also United States v. Rodriguez*, 2020 WL 2787629, at *5 (S.D.N.Y. May 28, 2020) ("[defendant's prison] has put in place, in accordance with BOP directives, a number of policies and actions to mitigate the spread of COVID-19, including . . . that [defendant] is routinely checked for symptoms associated with COVID-19" (citation omitted)); *United States v. Foozailov*, 2020 WL 3268688, at *2 (S.D.N.Y. June 17, 2020) (the

fact that "[defendant's prison] is administering COVID-19 tests to asymptomatic inmates with risk factors [] and . . . temperature screenings . . . weigh[s] against a finding of extraordinary and compelling circumstances"). In *United States v. Brown*, 2020 WL 4548045 (S.D.N.Y. Aug. 6, 2020), Judge Vincent Briccetti denied defendant's motion for compassionate release and determined that while defendant was obese, "her medical records [] show that BOP medical staff has routinely monitored and appropriately managed [defendant's] health." *Id.* at *2.

**(2) Danger to the Community**

The Court finds that Blair poses a danger to the community. *See* U.S.S.G. § 1B1.13; *see also United States v. Gil*, 2020 WL 2611872, at *2 (S.D.N.Y. May 22, 2020) ("the considerations that favor Defendant are outweighed by . . . the Court['s] concern[] that, if released, Defendant would pose a danger to his community"). The Court's dangerousness finding is based upon the following factors:

First, Blair's offense conduct gravely endangered his community. Blair was a member of the so-called "213 DTO," a Bronx-based criminal drug-trafficking organization that "sold crack cocaine and marijuana, among other illegal narcotics, within [an area of the Bronx called] the 213 Box." Superseding Indictment at 5. The Presentence Investigation Report describes the 213 DTO as having "controlled [] narcotics trafficking" in the 213 area of the Bronx "by threat of violence." PSR at 19-20. "The 213 DTO's operations were a major source of crime and violence in the area surrounding the 213 Box," including "35 shootings, of which 22 were fatal, as well as over 500 reports of shots fired" between 2011 and 2016. Id. ¶ 16; see also Gov't Opp. at 1.

The Government describes Blair as "a particularly violent member of the 213 DTO; he was known as 'Drilla' for his willingness to 'drill' his enemies with bullets." See Gov't Opp. at 4. "Blair habitually carried a firearm when operating in the 2013 box. Witnesses considered him among the most likely members of the conspiracy to use firearms and violence to advance the group's goals. Mr. Blair was

7

intercepted on a Title III wiretap discussing the need to use violence to protect the group's reputation." See Sentencing Tr. at 4:8-14; see also PSR ¶ 29.

In *United States v. Zubiate*, 2020 WL 3127881 (S.D.N.Y. June 12, 2020), Judge Alison Nathan concluded: "the Court cannot say that Defendant—who was engaged in a substantial narcotics business . . . and possessing a handgun while doing so—does not pose 'a danger to the safety of any other person or to the community.'" *Id.* at *2; *see also United States v. Dunn*, 2020 WL 4697113, at *6 (D. Minn. Aug. 13, 2020) (citation omitted) ("[Defendant] has not established that he does not present a danger upon immediate release[,] . . . given the seriousness of his [] offenses. Indeed, his underlying conviction involved drug trafficking activities that were in connection with gang activity.").

Second, while in prison, Blair has had a poor disciplinary record. He has been sanctioned eight times by the BOP. See BOP Chronological Disciplinary Record Ex. B at 1-3. Blair's violations include: "fighting with another person"; "possess[ing] [a] sharpened tooth brush"; "possessing a hazardous tool—a cell [phone] charger"; "interfering with taking count"; "refusing to obey an order" on three occasions; and "refusing [a] work [] assignment." Id. Blair was most recently sanctioned in February 2020 for "possessing a hazardous tool." Id. at 3.

In *United States v. Craft*, 2020 WL 4220488 (E.D. Mich. July 23, 2020), the court found that "[d]efendant ha[d] been disciplined in prison for infractions such as . . . fighting, possessing a hazardous tool and stolen property, [and] refusing to obey a staff order." *Id.* at *2. "The court cannot be assured that [defendant] will comply with the terms of supervised release or social distancing recommendations, which are essential to the safety of the community, if he is unable to adhere to the rules while in custody." *Id.*

Similarly, in *United States v. Mangum*, 2020 WL 7130793 (W.D. La. Dec. 4, 2020), the court observed that: "even while serving his current sentence, [defendant] continues to violate BOP policy, as evidenced by the fact that [defendant] has had disciplinary violations while in prison, including possession of a hazardous tool in 2019." *Id.* at *4. "[T]he Court concludes that [defendant] remains a

danger to others and his community." *Id.*; *see also United States v. Rowsey*, 2020 WL 4048500, at *5 (E.D. Wis. July 20, 2020) ("[T]he defendant was convicted of a serious offense and . . . . apparently has had violations while in custody. Under these circumstances, the court cannot find that the defendant is not a danger to the community.").

Third, the Court has denied the compassionate-release applications brought by two of Blair's co-defendants who were also members of the 213 DTO. The Court based its outcomes, in part at least, on the ground of danger to the community. *See United States v. Christie*, 2020 WL 3969962, at *2 (S.D.N.Y. July 14, 2020); *see also United States v. Hart*, 2021 WL 82281, at *4-5 (S.D.N.Y. Jan. 10, 2021).

**(3) The 18 U.S.C. § 3553(a) Factors Weigh Against Compassionate Release**

Blair's early release would be inconsistent with the goals of sentencing, which include the need "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *See United States v. Harris*, 2020 WL 5801051, at *3 (S.D.N.Y. Sept. 29, 2020); see also Sentencing Tr. at 2:12-3:4, 17:1-12.

For one thing, Blair's sentence reflected the seriousness of his criminal conduct. See Sentencing Tr. at 17:5-5. Blair was a retail seller of crack cocaine on behalf of a violent Bronx drug gang charged with "conspir[ing] to distribute and possess with intent to distribute: [] 280 grams and more of crack, . . . and [] 100 kilograms and more of marihuana." See PSR ¶ 2; Superseding Indictment at 4. Furthermore, "[i]n relation to this [conspiracy] to distribute crack, a gun was used [by Blair]." See Plea Hr'g Tr. at 14:8-9. Blair's sentence "reflected the Court's determination that 72 months' imprisonment was necessary to . . . adequately reflect the seriousness of his conduct." Gov't Opp. at 4-5. Reducing Blair's sentence now would "contravene the sentencing goal of imposing adequate punishment in light of the seriousness of the offense." *United States v. Romero*, 2020 WL 5578272, at *3 (S.D.N.Y. Sept. 16, 2020).

In *United States v. Lagares*, 2020 WL 4573054 (S.D.N.Y. Aug. 7, 2020), Judge Cathy Seibel found that: "Defendant's offense was serious: he was an active and loyal member of a violent gang [] that engaged in widespread violence and drug dealing. Defendant sold crack and other drugs on the street and in his home. He further possessed multiple guns . . . including in circumstances suggesting he had used one or planned to do so." *Id.* at *2. Judge Seibel concluded that: "[compassionate release] would not give sufficient weight to the seriousness of the offense or Defendant's disrespect for the law." *Id.*; *see also United States v. Huntington*, 2020 WL 7693992, at *4 (D.N.J. Dec. 28, 2020) (where the court concluded: "The nature and circumstances of [] the offense . . . continue to warrant a 41-month sentence of incarceration."); *United States v. Mustin*, 2020 WL 6131734, at *7 (E.D. Cal. Oct. 19, 2020) ("It is true that defendant only has approximately two months remaining on his prison sentence. . . . any sentence reduction would not reflect the seriousness of defendant's conduct[.]").

Second, as noted, Blair has a poor disciplinary record. He has incurred eight violations while incarcerated at FCI Ray Brook, with his most recent violation occurring less than a year ago. See p. 8, supra; see also BOP Chronological Disciplinary Record Ex. B. at 1-3. These violations undercut Blair's claim that he is rehabilitated. A sentence reduction at this time would undermine the goals of "promoting respect for the law" and affording "adequate deterrence."

In *United States v. Olivo*, 2021 WL 21898 (S.D.N.Y. Jan. 2, 2021), Judge Valerie Caproni found that: "[Defendant's] disciplinary records reveal that he has incurred four infractions . . . , ranging from refusing orders to fighting with another person." *Id.* at *3. Judge Caproni held that: "the consistency of his disciplinary issues undermines [defendant's] claims to have been rehabilitated. . . . Further, a sentence reduction would undermine the goals of deterrence." *Id.*

Third, Blair's release plan appears to be insufficient. He states only that: "[he] will be release[d] to [his mother's] residence upon release." Def. Mot. at 3. Blair offers no information regarding, among other

10

things, how he plans to avoid future criminal activity, or his plans for securing gainful employment. See Gov't Opp. at 5.

In *United States v. Alexander*, 2020 WL 2507778 (D.N.J. May 15, 2020), the court noted that: "Defendant has not provided any specific details regarding his plan, other than that he intends to reside with his uncle in Newark, New Jersey. Defendant has not outlined how his intended release plan will limit his likelihood of recidivism, and protect the public from further crimes." *Id.* at *5; *see also Huntington*, 2020 WL 7693992, at *4-5 ("[Defendant] proposes a release plan in vague terms and provides no supporting documentation. He says he would live with his mother . . . . it is unclear whether his mother has agreed to [defendant's] proposal. . . . releasing him now, in advance of completing his sentence, is [not] in accord with the critical portion of the analysis, consideration of the § 3553(a) factors[.]").

The Court commends Blair's efforts to utilize the resources available to him in prison, including participation in classes addressing anger management, stress, attitude adjustment, and his GED preparation. See Def. Mot. at 3; Def. Mot. Ex. B at 1. Blair is encouraged to continue to pursue these programs and any other programs that would aid in his rehabilitation in prison, in the halfway house, and during his supervised release. *See, e.g.*, *United States v. Carter*, 2020 WL 3051357, at *3 n.7 (S.D.N.Y. June 8, 2020).

## V. Conclusion & Order

For the reasons set forth above, Defendant's motion for compassionate release [Dck. #1095] is respectfully denied. The Government's request [Dck. #1096] to file Exhibit A (BOP medical records) under seal is granted. *United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated: New York, New York
      January 13, 2021

*Richard M. Berman*
**RICHARD M. BERMAN, U.S.D.J.**